IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| WARREN MONDAY, *et al.*, derivatively on behalf of KeyCorp, | ) ) ) | CASE NO.: 1:10 CV 1838 |
| | ) | JUDGE DONALD C. NUGENT |
| Plaintiffs, | ) ) | |
| v. | ) ) | MEMORANDUM OPINION |
| HENRY L. MEYER, III *et al.*, | ) ) | |
| Defendants. | ) ) ) | |

This matter is before the Court on Defendants Motion to Dismiss the Verified Amended Consolidated Shareholder Derivative Complaint. (ECF #32) Plaintiffs have filed an Opposition and supplemental authority and Defendants have filed a Reply and a Response to Plaintiffs' supplemental authority. The Court heard oral argument on the Motion and permitted the parties to file an additional brief. For the reasons that follow, Defendants' Motion to Dismiss is granted.

## STATEMENT OF FACTS[1]

Warren Monday, *et al.* ("Plaintiffs") are shareholders of KeyCorp, a banking and financial institution headquartered in Cleveland, OH. Plaintiffs filed this derivative action on August 19, 2010, against a number of current and former directors and executives of KeyCorp. For the purposes of this opinion, the focus is on ten of these directors: William G. Bares, Henry L. Meyer III, Carol A. Cartwright, Edward P. Campbell, Bill R. Sanford, Alexander M. Cutler,

---

[1] Except as otherwise cited, the facts stated herein are derived from the Amended Complaint, Answers, and the parties' briefings and submissions. The Court construes these facts in the light most favorable to the Plaintiff, as is required when deciding a motion to dismiss. *Directv, Inc. v. Treesh,* 487 F.3d 471, 476 (6th Cir. 2007).

Thomas C. Stevens, Eduardo R. Menascé, Lauralee E. Martin, and H. James Dallas ("Defendants"). The opinion focuses on these Directors because they were on the Board of KeyCorp at the time the Complaint was filed in 2010. Plaintiffs did not name the remaining six Directors of the August 2010 Board as defendants in this action.

Count I of the Complaint alleges that Defendants violated §10(b) of the Exchange Act and SEC Rule 10b-5. (Am. Compl. ¶¶ 313-323). Count II alleges that Defendants violated §20(a) of the Exchange Act. (Am. Compl. ¶¶ 324-335). Count III of the Complaint claims that Defendants breached their fiduciary duty to KeyCorp. (Am. Compl. ¶¶ 336-349). Count IV claims that Defendants are liable for committing corporate waste. (Am. Compl. ¶¶ 350-360). Finally, Count V charges Defendants with being unjustly enriched at the expense of KeyCorp.

In the mid to late 1990's, Defendants engaged in certain leveraged lease transactions known as "lease-in-lease-outs" ("LILOs"), which were designed to derive tax benefits by depreciating assets, amortizing costs, and deducting the interest. (Am. Compl. ¶¶ 113-116). In 1999, the Internal Revenue Service ("IRS") outlawed tax benefits stemming from LILOs, labeling the transactions as abusive and impermissible tax shelters. At this time, Defendants ceased entering into LILO transactions and began restructuring existing LILOs as "sale-in-lease-outs" ("SILOs"). (Am. Compl. ¶¶ 119-121). SILOs were structurally similar to LILOs and ultimately helped to generate similar tax benefits for the party originating the leases.

Plaintiffs allege the following conduct gives rise to the Counts in the Complaint: Defendants restructured LILOs as SILOs in order to circumvent the IRS' disallowance of LILOs (Am. Compl. ¶¶ 119-121), Defendants knew or should have known that the circumvention and the tax benefits stemming from the circumvention were unlawful and likely to be disallowed by

2

the IRS (Am. Compl. ¶ 124), and Defendants concealed the nature of LILOs, the similar nature and structure of SILOs, and KeyCorp's true financial position, including the magnitude of losses relating to the tax benefits claimed for the SILO transactions. (Am. Compl. ¶ ¶ 131-170). Plaintiffs further allege that immediate gains recognized by SILO transactions caused KeyCorp's stock price to artificially inflate at a time when Defendants were repurchasing millions of shares of KeyCorp stock. (Am. Compl. ¶ ¶ 185-203). Plaintiffs claim that the artificially inflated stock price also served as the inaccurate and misguided basis for Defendants' award of millions of dollars in executive and directorial compensation. (Am. Compl. ¶ ¶ 211-218)

On January 5, 2011, Defendants moved to dismiss the action, claiming that Plaintiffs lacked standing after failing to seek redress from KeyCorp through a pre-suit demand on the Board of Directors. Defendants further argue that two categories of Plaintiffs' claims are time-barred on their face.

## STANDARD OF REVIEW

Defendants move to dismiss the Complaint based upon Plaintiffs' failure to make a pre-suit demand and failure to adequately allege that demand was futile. The Sixth Circuit considers such motions under Rule 12(b)(6). *See Fed. R. Civ. P.* 12(b)(6); *McCall v. Scott,* 239 F.3d 808, 815 (6th Cir. 2001).

When deciding a motion to dismiss, the court must construe the complaint in the light most favorable to the plaintiff, accept its factual allegations as true, and draw reasonable inferences in favor of the plaintiff. *See Directv, Inc. v. Treesh,* 487 F.3d 471, 476 (6th Cir. 2007). However, "the tenet that a court must accept a complaint's allegations as true is inapplicable to

3

threadbare recitations of a cause of action's elements, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1940 (2009). *See also Gregory v. Shelby County,* 220 F.3d 433, 446 (6th Cir. 2000) (declaring that the court will not accept conclusions of law or unwarranted inferences cast in the form of factual allegations).

In order to survive a motion to dismiss, a complaint must provide the grounds of the entitlement to relief; this requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (internal citation omitted); *see Association of Cleveland Fire Fighters v. City of Cleveland,* No. 06-3823, 2007 WL 2768285, at *2 (6th Cir. Sept. 25, 2007) (recognizing that the Supreme Court "disavowed the oft-quoted Rule 12(b)(6) standard of *Conley v. Gibson*, 335 U.S. 41, 45-46, S. Ct. 99, 2 L. Ed.2d 80 (1957)"). Accordingly, the claims set forth in a complaint must be plausible, rather than conceivable. *See Twombly*, 550 U.S. at 570.

On a motion brought under Rule 12(b)(6), the court's inquiry is limited to the content of the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint may also be taken into account. *See Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.2d 426, 430 (6th Cir. 2008); *Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001). Public records include any materials subject to judicial notice, including securities filings made with the SEC and publicly available stock prices. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499, 2509 (2007); *Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 360-61 (6th Cir. 2001).

Generally, a claim need only give fair notice as to the grounds upon which it rests. *In re DeLorean Motor Co.,* 991 F.2d 1236, 1240 (6th Cir. 1993). In a shareholder derivative suit, a plaintiff must allege, with particularity, that a pre-suit demand was made upon the board of directors. *See Fed. R. Civ. P.* 23.1; *Ohio Civ. R.* 23.1. If plaintiffs do not make a pre-suit demand, Rule 23.1 requires, as a procedural matter, that plaintiffs plead with particularity the reasons why they believe demand is excused. *Id.* This requirement differs substantially from the principles of notice pleading. *See McCall*, 239 F.3d at 815.

## DISCUSSION

Defendants move to dismiss Plaintiffs' action for two reasons. First, Defendants assert that the Complaint should be dismissed for failure to comply with the condition precedent to all shareholder derivative suits: making a pre-suit demand on the board of directors. Second, Defendants assert that any claims arising from both the "stock repurchase" and the "entering into the transaction" claims are time-barred. The Court will address these grounds for dismissal in order.

**A. Demand Futility**

Federal Rule of Civil Procedure 23.1 provides that, in a shareholder derivative suit, the complaint must "allege with particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors or comparable authority and, if necessary, from the shareholders or members, and the reasons for the plaintiff's failure to obtain the action or for not making the effort." *See Fed. R. Civ. P.* 23.1. The sufficiency of the reasons for failing to make a pre-suit demand is determined under the law of the state of incorporation. *Kamen v. Kemper Fin*

5

*Servs., Inc.* 500 U.S. 90, 108-09 (1991); *McCall,* 239 F.3d at 815. KeyCorp is an Ohio corporation, thus the Court applies Ohio law to determine whether demand should be excused.

In Ohio, "directors of a corporation are charged with the responsibility of making decisions on behalf of the corporation and are the proper parties to bring a suit on behalf of the corporation or, in their business judgment, to forego a lawsuit." *In re Ferro Corp. Derivative Litig.,* 511 F.3d 611, 617-18 (6th Cir. 2008) (quoting *Drage v. Procter & Gamble,* 119 Ohio App. 3d 19, 24, 694 N.E.2d 479, 482 (1st Dist. 1997). Ohio adheres to the business judgment rule. This doctrine holds that there is a presumption "that any action taken by a director on behalf of the corporation is taken in good faith and for the benefit of the corporation." *Ohio Rev. Code* § 1701.59(C)(1). As such, shareholders do not have standing to bring a suit on behalf of the company "unless the board refuses to do so and that refusal is wrongful, fraudulent, or arbitrary, or is the result of bad faith or bias on the part of the directors." *Drage*, 119 Ohio App. 3d at 24, 694 N.E.2d 479 (citing *Cooper v. Cent. Alloy Steel Corp.,* 43 Ohio App. 455, 459-60, 183 N.E. 439 (5th Dist. 1931)).

Ohio law provides an exception to the demand requirement "when the shareholder can demonstrate that demand would have been futile." *Ohio Civ. R.* 23.1. Futility, in this context, means that "the directors' minds are closed to argument and that they cannot properly exercise their business judgment in determining whether the suit should be filed." *Drage*, 119 Ohio App. 3d at 25, 694 N.E.2d 479. If demand futility is proved, a shareholder can proceed with an independent suit. *Ohio Civ. R.* 23.1. Establishing futility is "not an easy task." *In re Ferro Corp. Derivative Litig.,* No. 1:04CV1626, 2006 WL 2038659 at *5 (N.D. Ohio 2006). A "bare allegation that the directors would not want to sue themselves or each other does not show that

6

demand would be futile." *Drage*, 119 Ohio App. 3d at 25, 694 N.E.2d 479. Examples of when demand may be futile include "when all directors are named as wrongdoers and defendants in a suit, when there is self-dealing by the directors such that the directors gain directly from the challenged transactions, or when there is domination of nondefendant directors by the defendant directors." *Carlson v. Rabkin,* 152 Ohio App.3d 672, 681, 789 N.E.2d 1122. Shareholders bear the burden of proving demand futility. *Drage,* 119 Ohio App.3d at 25, 694 N.E.2d 479.

Demand futility is difficult to establish and is not just a procedural technicality. "Rather, it serves the very important purpose of ensuring that before a shareholder derivative suit is brought, the company's board of directors has considered all possible intracorporate remedies." *Grand Council of Ohio v. Owens,* 86 Ohio App.3d 215, 221, 620 N.E.2d 234 (10th Dist.Ct.App. 1993) (quoting *Smachlo v. Birkelo,* 576 F.Supp. 1439, 1443 (D.Del. 1983)). The rationale is that management should be the first line of defense in initiating litigation, "since the responsibility for determining whether or not the corporation should pursue a claim in court ordinarily is an issue of internal management that rests within the discretion of the directors." *In re Keithley Instruments, Inc., Deriv. Litig.,* 599 F. Supp. 2d 908, 919 (N.D. Ohio 2009).

Demand futility is determined with respect to the board as it existed at the time the complaint was filed. *McCall*, 239 F.3d at 816; *Drage,* 119 Ohio App.3d at 26, 694 N.E.2d 479. Plaintiffs must show that a majority of the board members have an interest in the matter at hand and, therefore, could not objectively consider a demand. *McCall,* 239 F.3d at 826; *Drage*, 119 Ohio App.3d at 29, 694 N.E.2d 479. Plaintiffs must therefore set forth particularized facts establishing that at least eight of the sixteen KeyCorp Board members, as of August 19, 2010, were not disinterested, and thus could not have fairly considered a demand.

Rule 23.1's requirements are neither oppressive nor unreasonable. Failure to obtain action from the board, after making a pre-suit demand, does not result in a loss to Plaintiffs or preclude them from bringing the action again later. Plaintiffs are still free to go back and make a demand and then, if it fails, plead demand futility. To do this they must, with particularity, explain what they did to obtain the action desired from the directors and the reasons for the failure to obtain the action. *Fed R. Civ. P. 23.1.* The demand requirement recognizes the importance of giving directors the opportunity to either cure problems from within or choose to bring a lawsuit on behalf of the corporation. *Keithley,* 599 F. Supp. 2d at 919.

Demand is excused only when Plaintiffs adequately plead actionable claims against a majority of the board at the time the suit was filed, thus showing that a majority of the board faces a substantial likelihood of liability. Plaintiffs brought this action on August 19, 2010. Defendants are past and present members of the Board of Directors for KeyCorp, the nominal defendant in this derivative action. (Am. Compl. ¶ ¶ 56-79).

KeyCorp's Board of Directors comprised sixteen members when the Complaint was filed in August 2010. (Am. Compl. ¶ 242). Of the sixteen members, only two were in-house directors employed by KeyCorp. (Am. Compl. ¶ ¶ 57, 58). The remaining fourteen directors were hired as independent, outside advisors. (ECF #25, Ritts Decl. Ex. A). Plaintiffs name eight of the fourteen outside directors as defendants as well as two in-house directors. (Am. Compl. ¶ ¶ 64-71). Plaintiffs do not claim that the remaining six outside directors would be incapable of objectively hearing a demand. (Am. Compl. ¶ 242). Plaintiffs name thirteen other current and former officers and directors. (Am. Compl. ¶ ¶59-63, 72-79). These parties are not relevant to the analysis because the demand inquiry focuses only on the members of KeyCorp's Board of Directors as it

8

stood on August 19, 2010. *Keithley*, 599 F. Supp. 2d at 919.  The Directors relevant to the demand inquiry are Defendants William Bares, Henry Meyer III, Carol Cartwright, Edward Campbell, Bill Sanford, Alexander Cutler, Thomas Stevens, Eduardo Menascé, Lauralee Martin, and H. James Dallas.

Here, Plaintiffs argue that a pre-suit demand would be futile because the conduct and decisions of Defendants were not valid exercises of business judgment and are not protected by the presumption in favor of business judgment. (Am. Compl. ¶ ¶ 243-255). Plaintiffs attempt to plead, with particularity, that the individual Defendants did not act in good faith and in the best interests of the company, and that they either knew or consciously disregarded the possibility that their actions would harm the company. (Am. Compl. ¶ 244). They further contend that Defendants failed to act on a reasonably informed basis and with due care. *Id.*

Ohio Rev.Code § 1701.59(C)(1) provides that a director is presumed to act in accordance with his statutorily defined duties "unless it is proved by clear and convincing evidence that the director has not acted in good faith . . ." In the case at bar, Plaintiffs fail to show in their allegations that the Defendants are not entitled to the presumption of the business judgment rule. Plaintiffs make unfounded claims and offer nothing more than bare legal conclusions. The Complaint merely identifies the individual Defendants as members of KeyCorp's Board of Directors, and repeats the conclusion that Defendants, as a group, knew or recklessly disregarded that the stock price was inflated, resulting in "unjustified compensation" to  Defendants. (Am. Compl. ¶ 245). The Complaint tries to satisfy the particularity requirement by alleging that Defendants were "well aware of the relevant tax authority as it related to the Company's leveraged-lease transactions . . . were [also] aware that KeyCorp's SILO's were structurally and

9

functionally similar to LILOs transactions . . . [and] knew that, like KeyCorp's LILOs, the Company's SILOs had no real business purpose other than to secure the claimed tax benefits . . ." (Am. Compl. ¶ 246). In these allegations of knowledge or conscious disregard, Plaintiffs do not point to any meeting, report, conversation, or process used by the Board to make the challenged decisions. The Complaint relies on the structure of KeyCorp's corporate governance to show that Defendants must have known that their actions were not valid exercises of business judgment; this fails to meet the high standard of pleading demand futility.

Plaintiffs further contend that demand should be excused as futile because a majority of KeyCorp's Board faces a substantial likelihood of liability for their wrongdoing. (Am. Compl. ¶ 256). The Complaint alleges that Defendants "breached their fiduciary duty of loyalty when they knowingly, recklessly, or in conscious disregard for their duty of oversight failed to prevent the publication and dissemination of false and misleading statements to KeyCorp shareholders and approved and signed false and misleading Forms 10-K." (Am. Compl. ¶ 257). Plaintiffs fail to offer particularized factual allegations tending to show that any of the Directors, at the time the Complaint was filed, knew or consciously disregarded that KeyCorp's financial statements were misleading, nor do they show that the allegedly misleading statements were inaccurate.[2] The Complaint does not say when, or where, or how Defendants approved the "misleading Forms 10-K." Plaintiffs sole allegation is that Defendants allowed this financial information to be disseminated to shareholders, thus manifesting Defendants' tacit approval of allegedly misleading information. However, directorial approval of a challenged board decision is

---

[2] Furthermore, during the economically turbulent period from 2007-2010, it was not uncommon for financial institutions to have balance sheets, cash flow statements, and other financial statements that were, in reality, inaccurate; this is now understood with the benefit of hindsight.

insufficient on its face to raise a reasonable doubt about a director's objectivity. Shareholders would be able to regularly sidestep the demand requirement if all that was required was a showing that board members agreed to or approved some challenged decision.

Furthermore, the Complaint fails to allege that any individual director approved or took part in the decision making process for any LILO or SILO transaction, other than the AWG SILO restructuring in 1999. It merely offers the insufficient conclusion that Defendants "caused" KeyCorp's entry into these transactions, and that they knew or recklessly disregarded the fact that the transactions would ultimately be disallowed. (*See, e.g.,* Am. Compl. ¶ ¶ 40, 110, 113, 247). The Complaint is void of any facts showing what individual Board members considered, with whom they consulted, and what they were counseled to do by management or other outside advisors when it came to entering into SILOs.

Even if the Complaint did provide particularized allegations regarding Defendants' roles in the SILO transactions, there can be no substantial likelihood of personal liability for a majority of the Board because most of the directors, at the time the suit was filed in August 2010, were not on the Board in 1999 when KeyCorp entered into the AWG transaction. Furthermore, the Complaint merely mentions that KeyCorp stopped engaging in SILO transactions after 2004, but it does not allege that a particular SILO transaction was consummated in 2002 or later. This is relevant because a majority of the August 2010 Board was not in place until 2002, and Plaintiffs are required to show personal liability for a majority of the Board at the time the suit was filed. As a rule, directors cannot face a substantial likelihood of personal liability for claims based on events that occurred prior to appointment on the board. *See In re Am. Int'l Group, Inc. Deriv. Litig.,* 700 F. Supp. 2d 419, 434 (S.D.N.Y. 2010).

Plaintiffs further allege demand futility on the grounds that Defendants face a substantial likelihood of liability "in connection with the unjustified compensation of KeyCorp executives." (¶ ¶ 268-271). Alleging improper or excessive grants of executive compensation, as grounds for demand futility, has traditionally been difficult.[3] Courts defer heavily to the business judgment of directors in this arena. Deference stems from the notion that "[t]he value of assets bought and sold in the marketplace, including the personal services of executives and directors, is a matter best determined by the good faith judgments of disinterested and independent directors, men and women with business acumen appointed by shareholders precisely for their skill at making such evaluations." *In re infoUSA, Inc. S'holders Litig.,* 953 A.2d 963, 984 (Del.Ch.2007).

Here, Plaintiffs fail to plead specific facts showing that the Directors intended to harm or acted with conscious disregard when determining executive compensation. The Complaint tries to satisfy the requirement by showing that five Defendants were members of the Compensation and Organization Committee and, therefore, knew or should have known that the awarded compensations were inflated. (Am. Compl. ¶ 268). Plaintiffs claim that Defendants Bares, Campbell, Cartwright, Cutler, and Menascé "face a substantial likelihood of liability for their approval of unjust performance-based compensation when they knew the metrics underlying such compensation was artificially inflated." (Am. Compl. ¶ 269). The Complaint does not allege which metrics the Defendants relied on, nor does it show why it would have been unreasonable for the Directors to rely on such metrics. The Complaint, in essence, avers that Defendants knew

---

[3]Plaintiffs supplemental case filing depicts a case where demand futility was adequately alleged on the basis of excessive executive compensation. (ECF #41). In *NECA-IBEW Pension Fund v. Cox, et al.,* 2011 U.S. Dist. LEXIS 106161 (S.D. Ohio Sept. 20, 2011), the plaintiffs were able to show that the defendant directors submitted executive compensation to shareholders for a vote. The proposed figures were shot down by the shareholders and the board in that case approved the salaries anyway. *Id.* at *8-9. Plaintiffs here do not offer any such specific facts.

12

of the inflated data because of their membership on the Compensation and Organization Committee. Courts repeatedly reject allegations of membership on committees, and recitation of the roles of the committees, as establishing a likelihood of liability. *See Wood v. Baum*, 953 A.2d 136, 142 (Del.2008). If membership on a particular committee automatically imputed knowledge of wrongdoing in challenged board decisions, shareholders could plead around the demand requirement in every derivative action.

Finally, the Complaint claims futility through a variety of other allegations, aiming to show that the Board could not have objectively heard a demand.[4] Much of this portion of the Complaint focuses on Defendants' membership on the Audit Committee and the Risk Management Committee. (Am. Compl. ¶ ¶ 272-280). It is insufficient to allege that, because Defendants were members of certain committees, and because of the defined roles of those committees, Defendants automatically knew or should have known about the falsity of financial statements, inflated compensations stemming from inaccurate data, and that SILOs were likely to be treated by the IRS as LILOs. In order to allege futility based on a director's committee membership, the Complaint would have to show some specific report or piece of information that the committee was given which would have tipped them off to misconduct. Here, the Complaint relies on listing Defendants' committee memberships, a recitation of the roles of those committees, and the conclusion that, in these roles, Defendants would have known or consciously chose not to know of wrongdoing. Allegations that "the individual Defendants knew

---

[4] Among other things, Plaintiffs allege that a likelihood of personal liability could be found if the Sixth Circuit reversed this Court's dismissal of the ERISA action in *Taylor v. KeyCorp*. (Am. Compl. ¶ ¶ 281-283). The possibility that the Sixth Circuit could reverse the dismissal of *Taylor* does not establish Directors' personal liability here. In *Taylor*, we determined that the plaintiff suffered no injury and therefore lacked standing. Nothing was proven against any of the defendants in that case. The future of *Taylor* is immaterial to the demand futility analysis in this case.

13

about the alleged wrongdoings because they were directors and did 'director-type' things . . . would circumvent the demand requirement in almost any derivative suit and are simply insufficient under Ohio law" to show that directors could not objectively hear a demand. *Ferro I*, 2006 WL 2038659, at *6.

Accordingly, the Court finds that Plaintiffs have failed to demonstrate that pre-suit demand was futile. The demand requirement is not excused and this action must be dismissed.

## B.  STATUTE OF LIMITATIONS[5]

Defendants assert that Plaintiffs' claims based upon the "Stock Repurchase" and the "Entering into the Transaction" are time-barred and should be dismissed.

Moving first to the "Stock Repurchase" claims, Plaintiffs allege that the Defendants violated federal securities laws (Section 10(b)(5) and Section 20(a)) and Ohio common law (breach of fiduciary duty and corporate waste) by allowing KeyCorp to make stock repurchases from January 2005 to August 2007, when they knew that the price of KeyCorp stock was artificially inflated as a result of the allegedly illegal leverage lease transactions, the legality of which had allegedly been hidden from the public. (Am. Compl., ¶¶ 1, 28, 191, 195, 199). Defendants assert that the limitations period for those claims is two years and because Plaintiffs filed their complaint on August 19, 2010, more than two years after August 2007, the repurchase claims are time-barred. Plaintiffs assert that the common law breach of fiduciary duty and corporate waste claims are governed by Ohio's four year statute of limitations for fraud.

---

[5]

While the Amended Complaint will be dismissed in its entirety pursuant to Fed. R. Civ. P. 23.1 for failure to make a pre-suit demand, the Court will consider the fully briefed statute of limitations arguments presented by the parties in an effort to streamline the issues for the parties and the court should Plaintiffs make a future demand on KeyCorp's board based upon the claims asserted in this Amended Complaint.

Under 28 U.S.C. § 1658(b)(1)-(2), Plaintiffs' federal securities claims were required to have been brought "not later than the earlier of 2 years after the discovery of the facts constituting the violation, or 5 years after such violation."  The claim "accrues (1) when the plaintiff did in fact discover, or (2) when a reasonably diligent plaintiff would have discovered, 'the facts constituting the violation'–whichever comes first." *Merck & Co. v. Reynolds*, 130 S.Ct. 1784, 1789-90 (2010).  Plaintiffs argue that their federal securities claims based upon the Stock Repurchase are timely under *Merck* because Plaintiffs were unable to discover facts constituting the violation, including facts indicating that Defendants acted with scienter, until at least October 21, 2008, when Defendants announced that they had dismissed their appeal of the *AWG* action.  Up until that point, Plaintiffs allege that Defendants were still refuting Judge Gwin's findings in *AWG* as evidenced by the filing with the SEC of a Form 8-K on June 12, 2008,  which stated "management notes that, while it has recognized the effects of the adverse Court decision for financial statement purposes, *it continues to believe that the tax treatment it applied to its leveraged lease transactions complied with all applicable tax laws, regulations and judicial authorities in effect at the time....*" (Am. Compl. ¶297, emphasis in original) Plaintiffs also note that Defendants' filed Form 10-Qs on August 8, 2008 and November 7, 2008, which stated that the Company will "not recognize[] any charge for penalties or interest on penalties that the IRS has asserted or may assert in the future" and noted that "[m]anagement disagreed with the [AWG Leasing] decision . . ." (Am. Compl. ¶¶298-99).

However, Plaintiffs' Complaint gives lie to their assertion that they were unable to discover facts demonstrating a violation or that Defendants' acted with scienter.  Specifically, Plaintiffs allege that **"KeyCorp's Unlawful Tax Shelter Scheme Is Publicly Exposed**" during

15

the trial of the *AWG* litigation. (Am. Compl., ¶ 33 heading, emphasis in original) "Court [Judge Gwin] also upheld the government's claim that penalties were properly assessed because there was no reasonable cause for Key Corp's tax position and the position was not taken in good faith." (Am. Compl., ¶ 33) In paragraph 36, Plaintiffs state that Judge Gwin's decision in *AWG* confirmed that "the billion dollars of tax benefits claimed for all of KeyCorp's SILO transactions were unlawful and the Company imminently faced probable and massive loss contingencies." Judge Gwin's decision in *AWG* was issued on May 28, 2008. KeyCorp publicly disclosed Judge Gwin's *AWG* decision in a Form 8-K filing issued the next day, May 29, 2008 (5/29/08 Form 8-K, Ritts Decl. Ex. K). Plaintiffs also allege on June 12, 2008, KeyCorp announced a charge to earnings of $1.1 billion to $1.2 billion to resolve claims involving LILO and SILO related unpaid taxes, which included $475 million of interest. KeyCorp's stock dropped 10% within a day of the announcement. (Am. Compl. ¶ 38) Plaintiffs further allege that "[i]n June 2008, when news of the [Defendants'] illicit and improper tax schemes began to emerge, . . . the Company's stock price plummeted 25%....") (Am. Compl. ¶ 184) Finally, Plaintiffs refer to the *Taylor* ERISA action, which was filed on August 11, 2008, and makes the same allegations about the leveraged lease transactions as those made by Plaintiffs' in this case. (See Am. Compl. ¶¶ 43-46) Specifically, the Taylor complaint alleged that KeyCorp's stock price was artificially inflated, and that revelation of the "truth" at the *AWG* trial caused the stock to fall. (See Complaint In *Taylor v. KeyCorp, et al.*, Case No. 1:08 CV 1927, filed in the N.D. of Ohio on Aug. 11, 2008, ECF #1, ¶¶ 61-62.) Plaintiffs' note that the Taylor complaint alleged that "**Defendants knew of Key's high-risk conduct which exposed it to extraordinary risk**." (Am. Compl.,¶ 44, emphasis in original)

16

Based upon the allegations in Plaintiffs' Complaint, it is clear that "a reasonably diligent plaintiff would have discovered 'the facts constituting the violation," as well as scienter as early as May 28, 2008, when the *AWG* decision was issued, or by June 12, 2008 when KeyCorp announced its charge to earnings, or at the latest when Taylor filed her ERISA action on August 11, 2008.  Plaintiffs did not file this action until August 19, 2010. Accordingly, because all of these events occurred more than two years before Plaintiffs' filed their federal 10(b)(5) and 20(a) claims based, in part, on the "Stock Repurchase" claims, those claims (the parts of the claims that are based upon the "Stock Repurchase"allegations) are time barred.

Plaintiffs also assert that the "stock repurchases" form part of the basis of Plaintiffs' common law breach of fiduciary duty and corporate waste claims. Defendants assert that the parts of Plaintiffs' common law claims of breach of fiduciary duty and corporate waste that are based upon the stock repurchases, and thus on the sale of securities, are governed by Ohio's Blue Sky law in Ohio Rev. Code § 1707.43(B) which provides a two year limitations period for claims "based upon or arising out of" a sale of securities. Plaintiffs argue that their fiduciary duty and corporate waste claims sound in fraud and are governed by Ohio's four year statute of limitation and its discovery provisions. See Ohio Rev. Code § 2305.09(D).

Ohio courts "look to the actual nature or subject matter of the case, rather than to the form in which the action is pleaded" when deciding which limitations period applies. *Lawyers Coop. Publ'g Co. v. Muething*, 65 Ohio St.3d 273, 277 (1992). As this Court stated in *Lopardo v. Lehman Bros., Inc*., 548 F.Supp.2d 450, 467 (N.D. Ohio 2008), "Ohio law weighs heavily toward a finding that common law claims which are predicated on or inextricably interwoven with the sale of securities or the contracts related to securities sales are governed by the statute of

17

limitations in § 1707.43(B)."  To the extent that Plaintiffs' breach of fiduciary duty and corporate waste claims are based upon the Defendants' decision to  purchase KeyCorp securities at an artificially inflated price, such claim is predicated on or inextricably interwoven with the sale of securities.  As such, the two year statute of § 1707.43(B) applies.

Like federal law, Ohio law requires a plaintiff to file its action within two years "after the plaintiff knew, or had reason to know, of the facts by reason of which the actions of the person or director were unlawful, or . . . five years from the date of such sale or contract for sale, whichever is the shorter period."  § 1707.43(B).  For the same reasons set forth above regarding Plaintiffs' federal securities claims, Plaintiffs' common law breach of fiduciary duty and corporate waste claims, to the extent that they are based upon the "stock repurchases,"  are time barred.

Defendants also assert that Plaintiffs' breach of fiduciary duty and corporate waste claims are time barred to the extent that they are based on the decision to enter into the leveraged lease transactions between 1999 and 2004. According to Defendants, these claims are governed by Ohio's general four year limitations period found in Ohio Rev. Code § 2305.09(D); and further, § 2305.09 does not include a discovery rule for breach of fiduciary duty claims. Thus, a plaintiff's "cause of action for breach of fiduciary duty arises when the act or commission constituting the breach of duty occurs.' *Tablack v. Wellman*, No. 04-MA-218, 2006 WL 2590599, at *13 (Ohio App. Sept. 8, 2006). Since Plaintiffs allege KeyCorp entered into the challenged transactions which constitute the breach of fiduciary duty "between 1996 and 2004," (Am. Compl. ¶ 153), the fiduciary duty and corporate waste claims are barred to the extent that they are based on this conduct which occurred more than four years before the filing to the

18

Complaint.

Plaintiffs contend that their breach of fiduciary duty claims sound in fraud since they center on Defendants' alleged intentional or reckless misleading misstatements and omissions. Significantly, in a footnote in their opposition brief, and more clearly at oral argument, Plaintiffs clarified that their claims were not based on Defendants' causing KeyCorp to enter the LILO and SILO transactions between 1999 and 2004. Rather, their claims are based on alleged misrepresentations about the transactions made after the transactions occurred. Assuming that Plaintiffs' breach of fiduciary duty claims sound in fraud and center around Defendants' misrepresentations and misleading statements, then the discovery rule would apply. *See Orvets v. Nat'l City Bank, Ne.*, 772 N.E.2d 114, 120-121 (Ohio App. Ct. 1999). The Court is unable at this point in the proceedings to determine when all of the alleged misrepresentations or omissions occurred and when they reasonably should have been discovered. Thus, Defendants' Motion to Dismiss the breach of fiduciary duty/corporate waste claims as barred by the statute of limitations is denied at this time.

However, to the extent that Plaintiffs' Amended Complaint can be interpreted to base the claims of breach of fiduciary duty/corporate waste on the alleged mismanagement of Defendants for authorizing and/or permitting KeyCorp to violate the federal and state tax laws by entering the LILO and SILO transactions, such claims do not sound in fraud and would be time-barred as the last transaction occurred more than four years before Plaintiffs filed this action. (See Am. Compl.¶341)

## CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss for failure to make a pre-

suit demand on the KeyCorp Board of Directors is granted.  Further, Plaintiffs' federal securities claims (Counts One and Two) based upon the "stock repurchases" are dismissed as time-barred. Plaintiffs' common law breach of fiduciary duty and corporate waste claims, to the extent that they are based upon the "stock repurchases," are also time barred.  The Amended Complaint is dismissed and this action is terminated.

       IT IS SO ORDERED.

                                                        /s/*Donald C. Nugent*  
                                                        DONALD C. NUGENT  
                                                        UNITED STATES DISTRICT JUDGE

DATED:  November 29, 2011